UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CELINE S.A. et al.,

                      Plaintiffs,

-v.-

HONGKONG CSSBUY E-COMMERCE CO., LIMITED, d/b/a CSSBUY,

                      Defendant.

24 Civ. 4627 (JHR)

OPINION & ORDER

JENNIFER H. REARDEN, District Judge:

Before the Court is the motion of Plaintiffs Celine S.A., Christian Dior S.E., Loewe S.A., and Fendi S.R.L. to enjoin Defendant CSSBUY, for the duration of this litigation, from importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and selling allegedly counterfeit products bearing their marks. ECF No. 48.[1] For the reasons set forth below, Plaintiffs' motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND[2]

Plaintiffs are "world-renowned" luxury brands that sell high-quality apparel, fashion accessories, and leather goods. ECF No. 20 (Lambert Decl.) at ¶¶ 3, 18, 33, 48. Each has a number of registered marks for words and images associated with its brand. *See* Lambert Decl., Ex A, Ex. B, Ex. C, & Ex D (Trademark Registrations).

---

[1] The case was originally assigned to the Honorable Andrew L. Carter.
[2] The facts herein are drawn from the parties' declarations filed in connection with the preliminary injunction motion. *See Park Irmat Drug Corp. v. Optumrx, Inc.*, 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." (citation omitted)). "The Court has concluded that 'an evidentiary hearing is not required' because 'the relevant facts are not in dispute.'" *Team Rubicon Glob., Ltd. v. Team Rubicon, Inc.*, No. 20 Civ. 2537 (LTS) (KNF), 2020 WL 2539117, at *1 (S.D.N.Y. May 19, 2020) (quoting *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998)) (cleaned up). The Court also notes that neither party requested an evidentiary hearing. *See Charrette*, 159 F.3d at 755 ("A party may, of course, waive its right to an evidentiary hearing. . .").

Defendant is "an online shopping platform that aids consumers . . . wishing to purchase goods on popular Chinese ecommerce platforms, such as Taobao and 1688, which are notably directed towards businesses and consumers based in China and do not ship products directly to" the United States.  ECF No. 23 (Rawlins Decl.) at ¶ 3.  It "translat[es] the information posted . . . on Taobao and 1688 from Chinese to English to enable U.S. customers to shop on these platforms."  Rawlins Decl. at ¶ 4.  Defendant's customers "find product links" on the Chinese platforms, then submit the links for Defendant "to place orders."  ECF No. 21 (Tan Decl.) at 3.  Defendant "then purchases the products and directs shipment to its warehouses in China."  Rawlins Decl. at ¶ 4; *see also* Tan Decl. at 3.  At its warehouses, Defendant "unpackages and photographs the products received" for customer "review and approval," and then "repackages the product(s) and ships [them] to customers located in the U[nited] S[tates]."  Rawlins Decl. at ¶ 4.

Plaintiffs allege that Defendant "encourages, materially contributes to and directly profits from the purchase and sale of Counterfeit Products . . . , which are nearly indistinguishable from" Plaintiffs' products.  ECF No. 11 (Compl.) at ¶ 85.  Defendant admits that it has received orders for infringing products.  Tan Decl. at 3 ("[W]e have made every effort to identify infringing product orders, and only a dozen have been found.").  Although Defendant's website "filter[s] out product with titles containing major brand keywords," its "technology cannot determine if images" from listings on its ecommerce marketplace "are infringing."  *Id.*

Plaintiffs filed this action on June 18, 2024, alleging trademark infringement, counterfeiting, false designation of origin, passing off, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and related state common law claims.  *See* Compl. at ¶ 1.  That same day, Plaintiffs moved *ex parte* for a temporary restraining order and preliminary injunction.  *See* ECF No 16.  On June 20, 2024, the Court granted the temporary restraining order, ECF No.

42 (TRO), and imposed an asset freeze to prevent Defendant from "secret[ing], conceal[ing], transfer[ing], or otherwise dispos[ing] of ill-gotten proceeds" from having sold infringing goods, *id.* at ¶ 69. It also ordered Defendant to show cause why a preliminary injunction should not issue. *Id.* at 8. On July 15, 2024, the Court amended the temporary restraining order. *See* ECF No. 44 (Am. TRO). The amended TRO identifies and enjoins certain financial institutions that hold Defendant's accounts from "secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants [a]ssets from or to Defendant's [f]inancial [a]ccounts." *Id.* at ¶ I.B.1.

Over the course of the next several weeks, Defendant consented to repeated extensions of the temporary restraining order to allow the parties to negotiate and conduct informal discovery. *See* ECF Nos. 9, 31, 40. On September 25, 2024, however, Defendant requested "a briefing schedule[]" to "move to dissolve the TRO, oppose any forthcoming preliminary injunction, seek a declaration of no willful infringement under the Lanham Act, and/or modify Plaintiffs' asset freeze order over CSSBUY's account(s)." ECF No. 39 at 2. In anticipation of a show cause hearing, the Court permitted the parties to supplement their earlier submissions. *See* ECF No. 40. However, both parties stood on their existing briefing. Neither party requested an evidentiary hearing.

During a proceeding on October 9, 2024, the Court heard argument on Plaintiffs' application. *See* ECF No. 47. Defendant raised, for the first time, an issue concerning the territorial scope of Plaintiffs' proposed preliminary injunction. ECF No. 50 at 3. To review the newly raised issue, the Court ordered briefing and extended the temporary restraints, for good cause, until October 30, 2024, at 9:00 p.m. *Id.*

## II. DISCUSSION

"[T]he party seeking a preliminary injunction must show, by a preponderance of the evidence, '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18 Civ. 4945 (JMF), 2019 WL 293329, at *5 (S.D.N.Y. Jan. 23, 2019) (quoting *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011)); *see also Otoe Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (same); *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (same). Plaintiffs have satisfied this standard. They have also made a sufficient showing for the Court to extend the asset freeze imposed in the temporary restraining order.

Plaintiffs fail to establish, however, that the proposed preliminary injunction has an appropriate "geographical scope," as it "cannot extend beyond [Defendant's] qualifying domestic conduct." *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 99 F.4th 1150, 1174 (10th Cir. 2024). Because Plaintiffs make that showing only with respect to some of Defendant's conduct, the Court narrows the scope of their proposed preliminary injunction. Plaintiffs also have not established "good cause" to extend expedited discovery through the pendency of the litigation. *Mirza v. Doe #1*, No. 20 Civ. 9877 (PGG) (SLC), 2021 WL 4596597, at *5 (S.D.N.Y. Oct. 6, 2021).

### A. Preliminary Injunction

#### 1. Likelihood of Success

Plaintiffs bring trademark claims under two provisions of the Lanham Act: (1) 15 U.S.C. § 1114, for infringement and counterfeiting; and (2) 15 U.S.C. § 1125(a), for false designation of

4

origin, passing off, and unfair competition.[3]  Compl. at ¶ 1.  Under both provisions, the test for liability is the same:  The mark must be "entitled to protection," and Defendant's "use of the mark" must be "likely to cause consumers confusion as to the origin or sponsorship of [its] goods."  *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010).[4]

"A certificate of registration with the PTO is *prima facie* evidence that the mark is registered and valid (i.e., protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce."  *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) (citing 15 U.S.C. § 1115(a)); *see* 15 U.S.C. § 1057(b) (describing legal features of certificates of registration).  Here, Plaintiffs have submitted more than fifty certificates of registration of their marks.  *See* Trademark Registrations.  Thus,

---

[3] Plaintiffs also bring a New York common law claim for unfair competition, which Defendant has not addressed..  "Because [P]laintiff[s] [are] entitled to a preliminary injunction on the basis of trademark infringement, the Court need not reach [P]laintiff[s'] . . . state and common law claims."  *Guiness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc.*, No. 02 Civ. 0861 (LMM), 2002 WL 1543817, at *6 (S.D.N.Y. July 12, 2002); *see also Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 101 n.6 (2d Cir. 2010) (analyzing "causes of action under both [15 U.S.C. § 1114 of the] Lanham Act and New York State common law. . . . together" because "the claims are composed of the same elements").

[4] Defendant does not raise any argument that its use of Plaintiffs' marks falls short of a sufficient "use in commerce" to establish direct liability under the Lanham Act.  *See Atari Interactive, Inc. v. Printify, Inc.*, 714 F. Supp. 225, 232 (S.D.N.Y. 2024) ("[B]rokers, facilitators, or transactional intermediaries . . . that facilitate sales for independent vendors . . . generally escape Lanham Act liability." (quoting *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 446 (6th Cir. 2021))).  Even if Defendant had done so, however, "it is well settled that a *retailer's direct sale* of an infringing product is sufficient to create liability."  *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 463 (S.D.N.Y. 2011) (emphasis added).  Defendant acts as a direct seller, subject to Lanham Act liability, because it "take[s] title to the goods, . . . hold[s] them [potentially for three to six months], . . . [a]nd then [] package[s] and deliver[s] the goods in [its] own name."  ECF No. 54 (Tr.) at 10:16-19 (describing Defendant's business model without objection); *see* Rawlins Decl. at ¶¶ 4-7; Tan Decl. at 3 ("We purchase the products on [the customer's] behalf and provide international logistics services. . ."); *GMA Accessories, Inc.*, 765 F. Supp. 2d at 464 (describing a direct seller as one who might "t[ake] title to the merchandise, maintain[] an inventory of merchandise, [and] b[ear] the risk of loss").

Plaintiffs have established that the marks are "entitled to protection." *Tiffany (NJ) Inc.*, 600 F.3d at 102.

Courts in the Second Circuit typically "apply the eight-factor *Polaroid* test to assess whether a plaintiff has sufficiently pleaded 'likelihood of confusion.'" *1-800 Contacts, Inc. v. JAND, Inc.*, No. 22-1634, 2024 WL 4439136, at *6 (2d Cir. Oct. 8, 2024) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 496 (2d Cir. 1961)). "However, where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (cleaned up). "The court 'need only determine the more fundamental question of whether there are items to be confused in the first place—that is, whether the items at issue . . . are, in fact, counterfeit and whether [D]efendant[] sold those items,' or offered those items for sale." *Id.* (quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003)).

Through visual inspection of Defendant's website, Plaintiffs "confirmed that the products that Defendant is offering for sale us[e] virtually identical copies of the Plaintiffs' Marks" and "are, in fact, [c]ounterfeit [p]roducts." Rawlins Decl. ¶ 14; *see also id.* Ex. A (depicting listings on Defendant's website and comparing them to Plaintiffs' marks). Plaintiffs also "made test purchases" from Defendant's website and "confirm[ed] with certainty" that the products were counterfeit goods, based on "the low prices at which Defendant [wa]s offering the [c]ounterfeit [p]roducts and . . . a physical inspection." Rawlins Decl. ¶ 17-18. Defendant "has not rebutted Plaintiffs' evidence" of counterfeit sales. *Fendi Adele S.R.L.*, 696 F. Supp. 2d at 383. Indeed, Defendant admits that Plaintiffs "f[ound] infringements of [their] trademarks" on its website. ECF No. 13 (Opp. Br.) at 13. Accordingly, Defendant's use of counterfeit marks is "inherently

confusing." *Fendi Adele S.R.L*, 696 F. Supp. 2d at 383.  Therefore, Plaintiffs have established a likelihood of success on the merits of their trademark claims.

### 2. Irreparable Harm

Having shown a likelihood of success, including a likelihood of confusion, Plaintiffs are "entitled to a rebuttable presumption of irreparable harm."  15 U.S.C. § 1116(a); *see Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997) ("In the context of trademark and unfair competition injunctions, the requirement of irreparable harm carries no independent weight, as we have held that a showing of likelihood of confusion . . . establishes irreparable harm."); *see also Fendi Adele S.R.L*, No. 06 Civ. 243, 2010 WL 571804, at *18 (S.D.N.Y. Feb. 16, 2010) (presuming irreparable harm based on likelihood of confusion).  Defendant has not rebutted that presumption.  Thus, Plaintiffs have demonstrated irreparable harm.

### 3. Balance of Hardships

Defendant has not identified any harm it might suffer from Plaintiffs' proposed preliminary injunction.  In any event, "the law does not protect" the hardship arising from "the loss of the chance to" promote infringing products.  *IGT v. High 5 Games, LLC*, 17 Civ. 9792 (ALC), 2018 WL 1374265, at *2 (S.D.N.Y. Mar. 16, 2018) (quoting *Warner Bros. Enter. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008)); *see also 3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 197 (S.D.N.Y. 2020) ("It would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to [Plaintiffs'] brand.").  Accordingly, the balance of hardships weighs in Plaintiffs' favor.

### 4. Public Interest

A preliminary injunction prohibiting Defendant from selling and offering for sale counterfeit goods bearing Plaintiffs' marks is in the public interest because "the public has an

interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).

* * *

In sum, all factors weigh in favor of granting the preliminary injunction.

### B. Asset Freeze

The Court imposed an asset freeze as part of the temporary restraining order, TRO at ¶ III.A; Am. TRO at ¶ III.A, because it concluded that Defendant was "likely to secret[e], conceal, transfer or otherwise dispose of ill-gotten proceeds from its sales and/or facilitating sales of [c]ounterfeit [products]," TRO at ¶ 69; Am. TRO at ¶ 69. Currently, the order restrains an account worth approximately $140,000. *See* ECF No. 54 (Tr.) at 12:13-14.

Defendant argues against this restraint, contending that "any freezing of [Defendant's] accounts . . . is unnecessary given [Defendant's] understanding of the number of alleged infringements and its willingness to cooperate with Plaintiff[s]." Opp. Br. at 14. It also asserts that "an asset freeze . . . 'may not be used to preserve funds that may later be used to satisfy an award of statutory damages.'" ECF No. 39 at 2 (quoting *Spin Master v. Aciper*, No. 19 Civ. 6949, 2020 WL 6482878, at *3 (S.D.N.Y. Nov. 4, 2020)). Plaintiffs rejoin that, if the asset freeze is lifted, "Defendant can, and most certainly has the incentive to, transfer and hide its ill-gotten funds." ECF No. 18 at 20.

"District courts have the 'authority to freeze those assets which could [be] used to satisfy an equitable award of profits.'" *N. Face Apparel Corp. v. TC Fashions, Inc.,* No. 05 Civ. 9083 (RMB), 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006) (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995)). Although Plaintiffs "may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual

damages and profits . . . an award of statutory damages," 15 U.S.C. § 1117(c), Plaintiffs have not done so, Tr. at 13:19-23.  At this time, Plaintiffs seek "an award of Defendant's profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a)"  Compl. at ¶¶ A-D.  "The Lanham Act entitles a plaintiff who establishes a violation of [§ 1125(a)] . . . 'subject to the principles of equity, to recover . . . defendant's profits.'" (quoting 15 U.S.C. § 1117(a))).  *Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 WL 3952850, at *7 (S.D.N.Y. Oct. 8, 2010).  Therefore, "[t]he Court [] has authority to freeze the [] Defendant['s] assets insofar as they could be used to satisfy an award of their profits."  *Id.*

While "[t]he Court may exempt any particular assets from the freeze on the ground that they are not linked to the profits of allegedly illegal activity. . . the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities."  *Id.* (internal citations omitted and cleaned up).  Defendant has not satisfied that burden.  *See* Tr. at 19:21-25 (noting that Defendant has not submitted any evidence about the frozen account).  Accordingly, the asset freeze imposed in the temporary restraining order should remain in place through the pendency of this litigation.

### C. Territorial Scope of the Preliminary Injunction

Plaintiffs seek "an extraterritorial injunction" against Defendant's allegedly infringing conduct.  ECF No. 53 at 2; s*ee also* ECF No. 49.  Because 15 U.S.C. § 1114(1)(a) and § 1125(a)(1) "are not extraterritorial and . . .  extend only to claims where the claimed infringing use in commerce is domestic," *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 415 (2023), the Court may enjoin Defendant's foreign activities only if they involve a "domestic application" of the Lanham Act, *id.* at 418; *see Hermès Int'l v. Rothschild*, No. 22 Civ. 384 (JSR), 2024 WL 1089427, at *4 n.3 (S.D.N.Y. Mar. 13, 2024) ("[A]ctions that include foreign

conduct still fall within the Lanham Act's scope when they involve domestic applications of the statute." (internation quotation marks omitted)). "'[I]f the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application' of the statute, 'even if other conduct occurred abroad.'" *Abitron*, 600 U.S.. at 419 (quoting *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 414 (2018)). If, however, "the relevant conduct occurred in another country, 'then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.'" *Id.* (quoting *WesternGeco LLC*, 585 U.S. at 414).

Under the Lanham Act, "the *conduct* relevant to any focus the parties have proffered is infringing use in commerce, as the Act defines it." *Id.* at 423 (explaining that "'use in commerce' is the conduct relevant to any potential focus of § 1114(1)(a) and § 1125(a)(1) because Congress deemed a violation of either provision to occur each time a mark is used in commerce in the way Congress described, with no need for any actual confusion"). "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. . ." 15 U.S.C. § 1127. "[A] mark shall be deemed to be in use in commerce . . . on goods when— (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce . . ." *Id.*

"[T]he provisions specific to trademark infringement . . . narrow that definition further." *Hetronic Int'l, Inc.*, 99 F.4th at 1162. "Section 1114(1)(a) creates civil liability for any 'use in commerce,' meaning any use 'in connection with the sale, offering for sale, distribution, or advertising of any goods' that is 'likely to cause confusion.'" *Id.* (quoting 15 U.S.C. § 1114(1)(a)). Section 1125(a)(1) "imposes civil liability for 'uses in commerce' of any 'name

10

[or] symbol' 'in connection with any goods or services' that are 'likely to cause confusion.'" *Id.* (quoting 15 U.S.C. § 1125(a)(1)). Accordingly, "[t]he relevant conduct under § 1114(1)(a) and § 1125(a)(1) is the use of a trademark 'in commerce' 'in connection with any goods or services,' specifically 'the sale, offering for sale, distribution, or advertising,' in a manner 'likely to cause confusion.'" *Id.* at 1162, 1167 (quoting 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)) (further noting that the court "understand[s] [a defendant's] 'use[s] in commerce' as going beyond its domestic sales to include any marketing, advertising, and distributing activities that [the defendant] undertook in the United States").

As explained *supra*, counterfeit goods are "inherently confusing," *Fendi Adele S.R.L.*, 696 F. Supp. at 383, and Plaintiffs have shown unrebutted evidence that Defendant sells, offers for sale, distributes, and advertises goods that bear Plaintiffs' marks, *see supra* note 4; Rawlins Decl. ¶¶ 14, 18; Tr. at 10:16-19. Therefore, the central question is whether Defendant conducted the infringing activities "in U.S. commerce." *Hetronic Int'l, Inc.*, 99 F.4th at 1170.

"[T]he Lanham Act covers [Defendant's] direct sales to U.S. customers." *Id.* at 1163; *see* Tan Decl. at 1 (describing Defendant's U.S. sales). Indeed, Defendant's direct sales and its offers to sell goods to U.S. customers, *see* 15 U.S.C. § 1114(1)(a), "blatantly use[] [Plaintiffs'] trademarks in domestic commerce," *Hetronic Int'l, Inc.*, 99 F.4th at 1163. "[T]hus no extraterritorial application of the Act [i]s required." *Id.* As Defendant recognizes, the Court may issue an injunction targeting its sales, offers for sale, distribution, and advertisement of counterfeit goods where those activities are directed at U.S. customers. *Id.*; *see* ECF No. 52 at 2 (conceding that *Abitron* permits the Court to enjoin "extraterritorial conduct that could allegedly result in domestic trademark infringement"); Tr. at 16:21-25 (arguing that an injunction would be overbroad if it covered "transactions [that] do[] not result in a product coming into the United States").

11

Plaintiffs have not, however, made a showing that is sufficient to support a worldwide injunction. They aver that Defendant's "activities are all done in China." *See* Tr. at 16:3-8; Rawlins Decl. at ¶ 4 (stating that Defendant's "warehouses [are] in China"). Plaintiffs in no way suggest that Defendant provides services or performs work from within the United States. *Cf. Hermes Int'l*, 2024 WL 1089427, at *4 n.3 (recognizing a domestic application of the Lanham Act when a defendant, located in the United States, acted in concert with a foreign entity to infringe a trademark abroad). Nonetheless, Plaintiffs seek to enjoin Defendant's "foreign sales to foreign customers," *Hetronic Int'l, Inc.*, 99 F.4th at 1166, because they believe that Defendant "offers for sale and sells [c]ounterfeit [p]roducts to consumers located outside of the U.S. for re-sale to end consumers located in the U.S." ECF No. 53 at 2 (further alleging that "[i]t is highly likely that many of the bulk sale shipments of Counterfeit Products outside the U.S. are intended for sale to consumers located in the U.S.").[5] Yet at a minimum, Plaintiffs "needed to show that the [counterfeit goods] originally sold abroad were then *resold* inside the United States by U.S. end-users because only then would the goods have begun 'serving a source-identifying function in the way Congress described.'" *Hetronic Int'l, Inc.*, 99 F.4th at 1169 n.16 (quoting *Abitron*, 600 U.S. at 430 (Jackson, J., concurring)) (emphasis omitted). Plaintiffs provide no such evidence of downstream sales. Nor does the Complaint allege that any such sales have occurred.

---

[5] Plaintiffs rely on Justice Jackson's concurrence in *Abitron*, *see* ECF No. 49, which suggests that "the Lanham Act may protect against the foreign sale of goods bearing an infringing trademark if the goods are resold in the United States." *Hetronic Int'l, Inc.*, 99 F.4th at 1168; *see Abitron*, 600 U.S. at 431-32 (Jackson, J., concurring) (positing that a foreign company "may be subject to liability for domestic conduct" for manufacturing infringing goods abroad if those goods "serv[e] their core source-identifying function in commerce in the United States," by, for example, being resold by a third party in the United States). The Tenth Circuit rejected a similar theory of "downstream sales" as that put forward by Plaintiffs, however, because "Justice Jackson joined her majority colleagues 'in full,' and also because her concurrence advances a different point." *Hetronic Int'l, Inc.*, 99 F.4th at 1169.

"Although a plaintiff's burden at the preliminary-injunction stage is less than at the summary-judgment stage, the plaintiff must submit evidence sufficient to support a finding that the plaintiff will likely succeed on the merits and suffer irreparable harm, as the plaintiff bears 'the burden of proof on their motion for a preliminary injunction.'" *Engine Cap. Mgmt., LP v. Engine No. 1 GP LLC*, No. 21 Civ. 149 (VM), 2021 WL 1372658, at *5 (S.D.N.Y. Apr. 12, 2021) (quoting *Sunni, LLC v. Edible Arrangements, Inc.*, No. 14 Civ. 461, 2014 WL 1327880, at *3 (S.D.N.Y. Apr. 3, 2014)(internal citations omitted). "While the evidence need not be compelling *per se*, it should be enough to allow a court to conclude that the plaintiff is likely to prove the relevant facts by a preponderance of the evidence." *Id.* "Without any allegations, let alone evidence," of downstream sales, *Yammine v. Toolbox for HR Spolka z Ograniczona Odpowiedzialnoscia Spolka Komandytowa*, No. 21 Civ. 00093 (PHX) (MTL), 2023 WL 6259412, at *5 (D. Ariz. Aug. 8, 2023), the Court cannot draw that conclusion.

Therefore, the Court holds that Plaintiffs' proposed preliminary injunction, ECF No. 48, is overly broad. The injunction may only reach Defendant's acts or omissions that occur in the United States.

### D. Expedited Discovery

Plaintiffs' proposed preliminary injunction order extends "the expedited discovery previously granted in the TRO" through the pendency of the litigation. ECF No. 48 at 19-21.[6] "Although generally under [Federal] Rule [of Civil Procedure] 26(d)(1), '[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f),' an exception may be made . . . 'when authorized . . . by court order.'" *Mirza*, 2021 WL 4596597, at *5 (quoting Fed. R. Civ. P. 26(d)(1)). "Pursuant to that exception, '[c]ourts in this district have

---

[6] Defendant has not opposed Plaintiffs' motion for expedited discovery.

13

applied a flexible standard of reasonableness and good cause' in determining whether to grant party's expedited discovery request.'" *Id.* (quoting *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012)).

"Requests for expedited discovery are typically appropriate in cases involving requests for preliminary injunction," especially where the discovery "would better enable the court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14 Civ. 4242 (VSB), 2014 WL 12959675, at *2 (S.D.N.Y. July 23, 2014) (internal citations omitted). Accordingly, in the temporary restraining order, in anticipation of the preliminary injunction hearing, the Court found "sufficient cause" for expedited discovery. Am. TRO at 30. Now, however, this exigency has passed. Plaintiffs provide no further "reason for the Court to permit [them] to obtain discovery on an expedited basis, rather than in the ordinary course." *Kreit v. Byblos Bank S.A.L.*, No. 22 Civ. 10751 (LJL), 2023 WL 3005852, at *1 (S.D.N.Y. Mar. 28. 2023); *see Baerga v. City of New York*, No. 21 Civ. 05762 (PAC), 2023 WL 1107633, at *6 (S.D.N.Y. Jan. 30, 2023*)* (denying motion for expedited discovery because "there is no 'good cause' absent an impending hearing for a preliminary injunction"). Therefore, the Court denies without prejudice Plaintiffs' application to extend expedited discovery for the duration of the litigation.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' motion for a preliminary injunction, ECF No. 48, is GRANTED in part and DENIED in part. The preliminary injunction order will issue separately.

SO ORDERED.

Dated: October 30, 2024
      New York, New York

                                                 JENNIFER H. REARDEN
                                                 United States District Judge